## WILLIAMS v. HAMMOND.

MORTGAGES—FORECLOSURE—PAYMENT—DISCHARGE.

Upon an appeal from a decree discharging a mortgage on complainant's farm, as paid, and on review of the evidence and issues of fact, the decree of the trial court is affirmed as warranted by the evidence.

Appeal from Cass; Des Voignes, J. Submitted November 5, 1913. (Docket No. 77.) Decided October 2, 1914.

Bill by Isaac N. Williams against M. Grace Hammond and another to cancel a mortgage as satisfied and paid. From a decree for complainant, defendant Hammond appeals. Affirmed.

*W. C. Jones* and *Carr & Eby,* for complainant.

*David Anderson,* for defendant Hammond.

BIRD, J. The thing sought to be accomplished by the filing of the bill of complaint in this cause is the cancellation and discharge from record of a real estate mortgage for $1,600, which complainant gave on his farm in the year 1875. His claim is that the mortgage has been paid. The defendant denies that it has been paid, and claims that there is still due upon it upwards of $5,000, and by way of affirmative relief prays for a decree of foreclosure. The sole issue is whether anything is yet due on the mortgage. The chancellor before whom the hearing was had found in favor of the complainant, and a decree was made discharging the mortgage from record. Defendant M. Grace Hammond appeals from this decree.

The mortgage was given in January, 1875, by complainant, and bore interest at the rate of 10 per cent. His claim is that he made payments thereon from

time to time as the years passed, sometimes getting a receipt, and at other times getting no receipt, relying upon the promise of the mortgagee to indorse the same on the mortgage. He claims that these payments continued to be made until April, 1897, when he let the mortgagee have a horse, cow, and a harness, with the understanding that it was to be in full settlement of the balance due on the mortgage. The complainant had no memoranda of payments which he claimed to have made. This was explained by the fact that he could neither read nor write. The original mortgagee was one Murdock, who assigned the mortgage in March, 1888, to L. R. Anderson, who in turn assigned it to the defendant, his daughter, in March, 1904. Applying the payments indorsed on the notes, the defendant claims there is still due thereon the sum of $5,750.50. If we take into consideration only the payments which are indorsed on the notes, the defendant is undoubtedly entitled to the decree which she claims. We think, however, after a careful examination of the record, that we should not disregard all the other evidence in the case which shows that other payments were made to Mr. Anderson and never indorsed.

The complainant testified that he made other payments for which he held no receipts, reciting, in some instances, the circumstances under which they were made, and in others where they were made, and that the balance was settled by turning over the horse, cow, and harness. His testimony was corroborated by his wife and other members of his family, and by other witnesses who apparently had little, if any, interest in the controversy. This testimony we shall not discuss in detail. If this testimony by itself is not strong enough to discharge the burden of proof which rests upon the complainant, when considered in connection with certain conduct of Anderson and

his daughter, we think the chancellor might well conclude as he did that complainant's case was established. To some of these things we shall refer briefly. Mr. Anderson owned the mortgage from 1888 to 1904, and called upon the complainant frequently for money. These demands continued down to the time when complainants say that Anderson received the horse, cow, and harness in payment of his claim. This is conceded to be the last payment made. During the next seven years, Anderson was in that vicinity a part of the time and a part of the time he was in the West, but on two or three occasions while living in the West he returned and visited his former home. If defendant's theory is true that there is now $5,750 due on the mortgage, there must have been upwards òf $3,000 due before Mr. Anderson went West. The record shows that he was a good business man, and thrifty, and it is somewhat difficult to understand why he should have permitted a mortgage, with $3,000 and upwards due upon it, to drift along for seven years and better without taking any steps to enforce its collection, especially when that sum was very nearly the value of the farm. We think this has a strong tendency to corroborate the testimony of complainant that the balance due on the mortgage was settled in April, 1897, when the horse, cow, and harness were turned over to the mortgagee.

Another argument which is made by complainant's counsel which has some force is the fact that defendant had already collected upwards of $7,000 on the other mortgages which were included in the assignment with the one in question, in which assignment the entire consideration named was only $4,000. The force of this argument is somewhat weakened, however, by defendant's testimony that she did not purchase them; that the assignment was made for the purpose of enabling her to collect and discharge them.

Upon the hearing the mortgage was not produced, and the daughter could not find it among her father's papers. Her father, the assignor, died in 1909. She produced the notes with their indorsements. She testified she did not know how much was due upon the mortgage, and by her conduct and testimony she clearly evinced a doubt as to whether the payments were all indorsed upon the notes. After the assignment was made, the supervisor testified she stated to him that there was only "about $300" due on the mortgage. She also visited complainant and requested to see his receipts and took memoranda of them, and when pressed for a reason, upon cross-examination, why she wanted to see the receipts, she said:

"I saw the notes before the assignment was made. I did not figure up the amount due because one never could tell what had been paid, what they had receipts for, that is, receipts that had not been indorsed."

These statements upon her part give rise to the belief that she herself thought there might have been payments made and not indorsed by her father. Some other questions are presented by the record, but in view of our conclusion that the testimony fairly shows that the mortgage has been paid, it will be unnecessary to discuss them.

The decree is affirmed, with costs of this court to complainant.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred.